## UNITED STATES COURT OF APPEALS
### FOR THE EIGHTH CIRCUIT

MOREHOUSE ENTERPRISES, LLC d/b/a BRIDGE CITY ORDNANCE; ELIEZER JIMENEZ; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION,

*Plaintiffs-Appellants*

STATE OF ARIZONA; STATE OF WEST VIRGINIA; STATE OF ALASKA; STATE OF ARKANSAS; STATE OF IDAHO; STATE OF INDIANA; STATE OF KANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE MISSOURI; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF TEXAS; STATE OF UTAH; and STATE OF WYOMING,

*Plaintiffs,*

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; and STEVEN M. DETTELBACH as the DIRECTOR OF ATF,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of North Dakota
The Honorable District Court Judge Peter D. Welte
Case No. 3:22-cv-116

## PRIVATE PLAINTIFFS-APPELLANTS' REPLY BRIEF

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
wjo@mindspring.com

Stephen D. Stamboulieh (MS # 102784)
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us

*Counsel for Morehouse Enterprises, LLC d/b/a Bridge City Ordnance, Eliezer Jimenez, Gun Owners of America, Inc., and Gun Owners Foundation*

# TABLE OF CONTENTS

I. Appellees Have Failed to Undermine Appellants' Likelihood of Success on the Merits...........................................................................1

    A. ATF Has No Authority to Regulate Items that Congress Deliberately Left Unregulated.......................................................1

        1. A Firearm Must Have a "Frame or Receiver"............................1

        2. ATF Cannot Rearrange the Statutory Text............................4

        3. A So-Called "Weapon Parts Kit" Is Not a "Firearm" Without a "Frame or Receiver".......................................................9

    B. ATF May Not Rewrite the Statutory Definition of Silencers......11

        1. ATF May Not Criminalize the Innocent Ownership of Ordinary Household Items.......................................................11

        2. ATF Cannot Add Language to the Statute............................13

    C. ATF May Not Add Language to the Statute to Require Serialization of Homemade Firearms.........................................18

    D. ATF May Not Provide Post Hoc Rationalization for the Final Rule's Constitutionality.................................................21

    E. ATF May Not by Regulation Adopt Its Arbitrary and Capricious Classification System.................................................29

Conclusion.................................................................................30

Appellate Case: 22-2812     Page: 2     Date Filed: 12/21/2022 Entry ID: 5229342

# TABLE OF AUTHORITIES

*Antonyuk v. Hochul*, 2022 U.S. Dist. LEXIS 201944 (N.D.N.Y. Nov. 7, 2022)..............................................................................................25

*Arnold v. Brown*, No. 22CV41008 (Or. Cir. Ct. Dec. 16, 2022)..............25

*Ass'n of New Jersey Rifle & Pistol v. Grewal* (No. 19-3142) (3d Cir. 2022)..................................................................................................24

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........................21, 27

*Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022)....................................24

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).................9, 17

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)......................................................6

*Koi Nation of N. Cal. v. DOI*, 361 F. Supp. 3d 14 (D.D.C. 2019)......27, 28

*Nat'l Fuel Gas Supply Corp. v. FERC*, 899 F.2d 1244 (D.C. Cir. 1990).28

*NLRB v. Food Store Emps. Union, Local 347*, 417 U.S. 1 (1974)...........28

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)....passim

*Ojo v. Garland*, 25 F.4th 152 (2d Cir. 2022)...........................................22

*Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935).....................................2

*Panhandle Coop. Ass'n v. EPA*, 771 F.2d 1149 (8th Cir. 1985).............22

*Rigby v. Jennings*, No. 21-1523 (MN), 2022 U.S. Dist. LEXIS 172375 (D. Del. Sept. 23, 2022).........................................................................27

*Russello v. United States*, 464 U.S. 16 (1983)...........................................5

*Saulsberry v. St. Mary's Univ.*, 318 F.3d 862 (8th Cir. 2003)................25

Appellate Case: 22-2812     Page: 3     Date Filed: 12/21/2022 Entry ID: 5229342

*Shinseki v. Sanders*, 556 U.S. 396 (2009)....................................................23

*Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506 (D.C. Cir. 1983)....................................................23

*United States v. Annis*, 446 F.3d 852 (8th Cir. 2006)............................10

*United States v. Nunez-Hernandez*, 43 F.4th 857 (8th Cir. 2022)..........27

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014)...................................16

*Young v. Hawaii*, 45 F.4th 1087 (9th Cir. 2022)......................................24

*VanDerStok v. Garland*, No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 159459 (N.D. Tex. Sept. 2, 2022)....................................................1, 5

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)....................................................7, 8

*Weyerhaeuser Co. v. Costle*, 590 F.2d 1011 (D.C. Cir. 1978)...................23

## STATUTES

5 U.S.C. § 706....................................................22

18 U.S.C. § 921(a)(3)....................................................passim

18 U.S.C. § 921(a)(9)....................................................15

18 U.S.C. § 921(a)(10)....................................................15

18 U.S.C. § 921(a)(25)....................................................11, 15

18 U.S.C. § 922....................................................8

18 U.S.C. § 923(i)....................................................3, 13, 14, 15, 16, 19

Appellate Case: 22-2812     Page: 4     Date Filed: 12/21/2022 Entry ID: 5229342

26 U.S.C. § 5801.................................................................16

26 U.S.C. § 5802.................................................................16

26 U.S.C. § 5842(a).............................................................15

## OTHER AUTHORITIES

Antonin Scalia & Bryan A. Garner, Reading Law (2012)...........2, 12, 21

## REGULATIONS

87 Fed. Reg. 24652 ("Final Rule").......................................26, 30

Appellate Case: 22-2812    Page: 5    Date Filed: 12/21/2022 Entry ID: 5229342

# ARGUMENT

## I. Appellees Have Failed to Undermine Appellants' Likelihood of Success on the Merits.[1]

### A. ATF Has No Authority to Regulate Items that Congress Deliberately Left Unregulated.

#### 1. A Firearm Must Have a "Frame or Receiver."

Federal law provides that, in order to constitute a firearm, an item must either be (i) a "weapon" or (ii) "the frame or receiver *of any such weapon*" — unambiguously indicating that every "weapon" must contain a "frame or receiver."  Opening Br. 22; 18 U.S.C. §921(a)(3).  In other words, it is the "frame" or "receiver" which constitutes a firearm, regardless of whether it stands alone or is assembled as a "weapon." Without a "frame" or "receiver," there can be no firearm.

Apparently not content with the statutory language, the district court permitted ATF to reimagine the text such that an object (or collection of items) nevertheless can constitute a "firearm" even though ATF concedes there is no "frame or receiver" present.  App. 10; R. Doc. 85, at 10.  This was error.  *Cf. VanDerStok v. Garland*, No. 4:22-cv-00691-

---

[1] To promote judicial economy and avoid duplicative briefing, the Private Appellants and State Appellants each incorporates the arguments presented by the other.

1

O, 2022 U.S. Dist. LEXIS 159459, at *16–17 (N.D. Tex. Sept. 2, 2022) (correctly concluding that ATF may not "regulate a component as a 'frame or receiver' even after ATF determines that the component in question is *not* a frame or receiver"); *id.* at *14 ("That which *may become* a receiver is not itself a receiver.").

Rather than attempting to downplay or simply avoid the district court's erroneous conclusion, Appellees instead double down, rejecting as "incorrect" the central tenet and long-standing understanding of what constitutes a firearm. ATF Answering Br. 23. On the contrary, Appellees theorize that "[n]owhere does the Act or th[e] commonsense definition[2] of 'weapon' suggest any requirement that a weapon include a frame or

---

[2] All too often, appeals to "commonsense" by anti-gun forces are devoid of any sense at all. Indeed, the "commonsense" argument Appellees provide here is that "weapons" can be "firearms" without containing a frame or receiver because, "[a]s the Rule explains, dictionaries define a 'weapon' simply as an 'instrument of offensive or defensive combat.'" Answering Br. 24. Under Appellees' logic, knives and clubs would be "firearms" merely because they constitute "an instrument of offensive or defensive combat." On the contrary, Section 921(a)(3) does not define a "weapon," but rather what constitutes a "firearm" *by use of* the word "weapon." It is axiomatic that "[c]ontext is a primary determinant of meaning." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 167 (2012); *see also Panama Refin. Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting). In other words, the word "weapon" is to be understood in its context as a "firearm" — not unmoored from context by applying some broad concept of "weapon" found in a dictionary.

Appellate Case: 22-2812     Page: 7     Date Filed: 12/21/2022 Entry ID: 5229342

receiver—much less that it include a completed, or fully operational, one." *Id.* at 24 (emphasis added). Appellees continue that "the presence of a functional frame or receiver is not the *sine qua non* of a firearm."[3] Answering Br. 24. Appellees' claim — that not every "firearm" has a "frame or receiver" — must be rejected outright.

First, as noted above, the statute's text and context confirms that each and every firearm must have a frame or receiver. Second, Appellees' own briefing in this case belies their claim, as they describe the "frame or receiver" as "a firearm's primary structural component." Defendants' Opposition to Plaintiffs' Motion (App. 497; R. Doc. 43, at 1). Third, ATF regulations require "importers and manufacturers to identify each firearm they import or manufacture with a serial number on the receiver or frame." Answering Br. 4; *see* 18 U.S.C. §923(i). But if, as Appellees now claim, not every firearm contains a "frame or receiver," then where would such alleged firearms be serialized, and how would they be recorded in the records of dealers or be traced by ATF?

---

[3] Perhaps this is how ATF was recently able to conclude that a *metal water bottle* — by itself — may be a "firearm" or even a "machinegun." *See* Compl. ¶265 n.39. (App. 90; R. Doc. 1, at 63).

Appellate Case: 22-2812    Page: 8    Date Filed: 12/21/2022 Entry ID: 5229342

Paradoxically, Appellees argued below that "a muffler or silencer, as a 'firearm,' must have ... a 'frame or receiver' so manufacturers and importers can identify it with a serial number." App. 514; R. Doc. 43, at 18 (emphasis added). Under ATF's imagination, then, actual firearms *need not have* frames and receivers (even though the statute demands it), yet every silencer "*must have*" a frame or receiver (even though the statute does not contemplate it). The agency's willingness to boldly assert illogical and inconsistent positions demonstrates how far from the statute it has strayed.

## 2. ATF Cannot Rearrange the Statutory Text.

As Appellees concede, in order to target *incomplete* and *unfinished* 80 percent frames and receivers — items that ATF for decades has ruled are *not firearms* — the Final Rule imports the word "readily" from Section 921(a)(3)(A) into Section 921(a)(3)(B), even though admitting "the statute does not use the term 'readily'" in that section. Answering Br. 11, 19–20. Appellees claim that this administrative rewrite was necessary because "Congress has repeatedly made clear that non-operational weapons that are 'designed to' or may 'readily' be converted to operational weapons are included" as firearms. *Id.* at 19. But in referencing "weapons," Appellees

4

point to Section 921(a)(3)(A), where the concept of "readily" appears. Appellees provide not a shred of evidence that Congress intended an item which ATF concludes is *not* a "frame or receiver" to be counted as a "firearm." *See VanDerStok* at *14–16.

Appellees claim that no "inference may be drawn" from the absence of the word "readily" in Section 921(a)(3)(B), and argue that "it is implausible to think that Congress precluded ATF from using the term" in places it does not appear.[4] Answering Br. 20. But that is exactly what basic principles of statutory interpretation require. Opening Br. 16 n.3; *see Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in

---

[4] Appellees dispute that the Final Rule attempts to regulate items which ATF has conceded are *not* "frames or receivers." Answering Br. 20. But as Appellants have explained (Opening Br. 17), the Final Rule takes the position that a so-called "frame or receiver parts kit" — a collection of items including an unfinished frame or receiver sold together with "templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials" to manufacture it — is somehow a "frame or receiver" even though *none of its component parts* is a "frame or receiver." This illogic was not lost on the *VanDerStok* court, finding that ATF may not "regulate a component as a 'frame or receiver' even after ATF determines that the component in question is *not* a frame or receiver." *Id.* at *16–17.

Appellate Case: 22-2812     Page: 10     Date Filed: 12/21/2022 Entry ID: 5229342

another section of the same Act, it is generally presumed that Congress acts intentionally and purposely….").

Further, as Appellants have pointed out, even if "readily" had any place in understanding Section 921(a)(3)(B), where it does not appear, ATF's definition of "readily" in the Final Rule is incomprehensible. Opening Br. 17–20. In response, Appellees demur, erroneously claiming that Appellants have "fail[ed] to identify any specific ambiguity," and asserting without any analysis or explanation that the Final Rule is highly "detailed" and therefore perfectly clear. Answering Br. 21. On the contrary, as Appellants have explained, the Final Rule's definition of "readily" uses a host of ambiguous terms, making it impossible for any American to understand it, while giving the agency leeway to use its new definition against whomever it wishes. *See* Opening Br. 19. To be sure, "a court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). But here, Appellants have specifically identified the ambiguous language in the Final Rule's definition of "readily," including: "clearly identifiable," "critical stage," "critical line," "substantial step," "sufficiently complete," "primordial state," "without more," etc. *See*

6

Compl. ¶¶323–36. (App. 105-106; R. Doc. 1, at 78-79). None of these vague terms has any independent meaning, and none is explained or defined in the Final Rule such that an ordinary person could have any hope of delineating which items constitute firearms — a critically important determination, as miscalculation can transform a person's life by making him into a felon without Second Amendment rights.

Appellees' fallback position is that, even if the Final Rule's definition of "readily" is ambiguous, "the Rule provides a mechanism to resolve any uncertainty" — ATF's voluntary classification process. Answering Br. 21; *see* Opening Br. 40–43. In support of this claim, Appellees rely on *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). But that case supports precisely the opposite conclusion. There, the Court explained that the permissible "degree of vagueness ... depends in part on the nature of the enactment," and there is a "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99. As this case involves what items constitute firearms under federal law, the Final Rule's precision must be

Appellate Case: 22-2812    Page: 12    Date Filed: 12/21/2022 Entry ID: 5229342

exacting, as serious criminal penalties attach for violation thereof.[5] Moreover, the Court in *Hoffman* explained that "perhaps the most important factor affecting the clarity … is whether it threatens to inhibit the exercise of constitutionally protected rights," *id.* at 499 — such as the Second Amendment right implicated in this case. In other words, *Hoffman* condemns — rather than saves — the Final Rule's definition of "readily."

Finally, although Appellees eventually concede that "ATF has never used the term ['readily'] in this context," they claim that this "is of no moment" because ATF's prior test represents essentially the same thing. Answering Br. 37. On the contrary, the agency's past framework examined items based on the presence or absence of "certain difficult milling operations" (you may do A, B, and C, but not X, Y, or Z) and was thus understandable, whereas the Final Rule's new policy (don't "cross" the magic "critical line" of "readily") is incomprehensibly vague. Indeed,

---

[5] Such crimes could include (i) engaging in the business of manufacturing or dealing firearms without being licensed; (ii) transferring firearms to residents of other states or across state lines; (iii) transferring to or receive a firearm from a prohibited person; (iv) shipping firearms in prohibited ways; (v) removing serial numbers; and (vi) failing to conduct background checks or perform recordkeeping. 18 U.S.C. §§ 922(a)(1)(A),(3),(5),(9),(d)(1)–(11),(e),(f),(g)(1)–(9),(h),(k),(t).

Appellate Case: 22-2812     Page: 13     Date Filed: 12/21/2022 Entry ID: 5229342

Appellees recently argued in litigation that the concept of "readily" *has no place* in Section 921(a)(3)(B) — the exact opposite of the position they take here. *See* Compl. ¶246 (App. 85; R. Doc. 1, at 58). ATF's power to act in an arbitrary manner is vastly enhanced when it creates vagueness in the rules by which gun owners must live.

Fortunately, the truth snuck into Appellees' brief, where they concede that "ATF's previous classifications are *not consistent with the approach required by the Final Rule*" (Answering Br. 38 (emphasis added)), conceding that the agency's old and new tests cannot possibly be the same. Yet in briefing in this Court, the agency *still* refuses even to acknowledge that it has changed course from prior policy, and so the Final Rule must be struck on that basis. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

### 3. A So-Called "Weapon Parts Kit" Is Not a "Firearm" Without a "Frame or Receiver."

Appellants challenged the Final Rule's regulation of so-called "weapon parts kits" as firearms — even though such kits do not contain a frame or receiver. Opening Br. 20-23. Appellees counter that "[c]ourts have … long recognized that …unfinished, or nonoperational, weapons … constitute 'firearms.'" Answering Br. 23. Appellees continue to rely

Appellate Case: 22-2812   Page: 14   Date Filed: 12/21/2022 Entry ID: 5229342

on this Court's decision in *United States v. Annis*, 446 F.3d 852, 857 (8th Cir. 2006), and similar cases in other circuits. *Id.* But again, each of those cases involved an *actual* firearm, with a *complete* frame or receiver, which had merely been disassembled, unloaded, or broken. Compl. ¶¶271–77 (App. 92-96; R. Doc. 1, at 65-69); Opening Br. 23–24 n.10. In fact, Appellees *admit* as much with respect to *Annis*. Answering Br. 23–24 ("rifle with the clip and bolt removed," which "had a functional frame or receiver, even if the firearm itself was not operable").

Entirely unlike *Annis*, the Final Rule's "weapon parts kit" *does not contain* a complete "frame or receiver" which is merely disassembled, unloaded, or broken, but rather an incomplete, unfinished precursor item that ATF admits is not (and never has been) a "frame or receiver." *See* Section I.A.1., *supra*. Thus, requiring much more than to be merely *repaired*, *assembled*, or *loaded*, a "weapon parts kit" must first be *manufactured* into a firearm — by taking an incomplete and unfinished frame or receiver and cutting, milling, grinding, sanding, filing, and/or drilling it to completion. Appellees *still* have not offered a single shred of legal authority standing for the proposition in the Final Rule that an item

or group of otherwise-unregulated items magically constitutes a "firearm" under Section 921(a)(3) without having a "frame or receiver."

**B. ATF May Not Rewrite the Statutory Definition of Silencers.**

**1.    ATF May Not Criminalize the Innocent Ownership of Ordinary Household Items.**

Appellants argued that the Final Rule improperly defines a "complete muffler or silencer device" as any group of objects that "contains all component parts necessary to function" as a silencer, "whether or not assembled or operable," thus omitting the statutory elements of "design" and "intent," and creating strict criminal liability for virtually any homeowner who invariably possess numerous combinations of ordinary, innocuous household objects which in theory *could* be used to construct a crude silencer. *See* Opening Br. 28–32 (providing a nonexhaustive list of such common items). Indeed, whereas the statute defines as a silencer (i) "any device *for* silencing," (ii) parts ... *designed* ... and *intended*," or (iii) "any part *intended* only *for* use," 18 U.S.C. §921(a)(25), the Final Rule entirely omits these elements.

Appellees provide two responses. First, they claim that a device falling under this new definition *already* "must be a 'firearm muffler or firearm silencer.'" Answering Br. 29. But this makes no sense, as there

11

would be no need for ATF to define at what point an item *becomes* a "silencer" under the regulation, if it is *already* a "silencer" under the statute. Appellees claim their definition is necessary to clarify "the moment when particular obligations, such as the requirement to mark a device, attach." *Id.* at 30. But again, if a device is *already* a silencer under the statute, then the "obligation" to mark it has *already* "attached." Appellees' first justification is therefore nonsensical.

Second, Appellees claim that the statutory requirements of "design" and "intent" are somehow "simply incorporated into the [Rule's] definition," even though they do not actually appear there. *Id.* at 29; *see also* 13. This is a curious claim, as the agency's proposed rule contained the language "necessary to function *as designed*," but which was deliberately pared down to "necessary to function" in the Final Rule. In other words, Appellees went to the trouble to expressly *remove* the very language they now claim is impliedly *present*. Appellees' rationalization violates the "omitted case canon," as "nothing is to be added to what the text states or reasonably implies," and "a matter not covered is to be treated as not covered." Reading Law at 93–94. If Appellees are correct that the missing statutory concepts are "incorporated" into the Final

Rule, then *the regulation* ("all component parts necessary to function ... as designed and intended") would completely overlap with *the statute* ("parts[] designed ... and intended for use in assembling or fabricating a silencer...."). There would simply be no need for such a redundant regulation. On the contrary, the agency's attempt — in litigation — to justify its *intent*[6] behind the Final Rule cannot be relied on to override *the text* the regulation that the agency actually promulgated.

## 2. ATF Cannot Add Language to the Statute.

Appellants argued that the Final Rule conflicts with the statutory text by creating an entirely unnecessary (and illogical) concept of a "firearm muffler or silencer frame or receiver," noting that ATF has no statutory authority to declare *where* silencers must be marked. Opening Br. 28–30. Appellees counter that "the Gun Control Act [18 U.S.C. §923(i)] requires all firearms, including silencers, be marked on the frame

---

[6] As Appellants explained, there is serious reason to question the agency's claim of innocent intent here, as ATF recently began *enforcing* its nefarious new policy — targeting law-abiding gun owners who own items that are not "designed" or "intended" to be silencers, but nevertheless may "contain all component parts necessary to function" as silencers. Opening Br. 28 (providing record citations). ATF's actions speak louder than its words.

or receiver." Answering Br. 31. Appellees do not finish their thought, but it appears their claim that Section 923(i)'s marking requirement applies to "all firearms" (including silencers) is based on the definition of "firearm" contained in Section 921(a)(3), which includes "any firearm muffler or firearm silencer." Appellees' interpretation of the statutory language is incorrect for several reasons.

First, Section 923(i)'s serialization requirement clearly states that "each firearm" must be identified "by means of a serial number engraved or cast on the _receiver or frame of the weapon_" (emphasis added). This language provides two clues. First, the words "of the weapon" indicates that Section 923(i)'s serialization requirement applies to firearms that are guns, not to silencers. Indeed, a silencer is not a weapon — not even under the dictionary definition provided by Appellees (Answering Br. 24), and certainly not under the statutory text, which defines a "firearm" as (i) a "weapon" _or_ (ii) "the frame or receiver of any such weapon" _or_ (iii) "any firearm muffler or firearm silencer." 18 U.S.C. §921(a)(3). The statute makes crystal clear that a "weapon" is entirely different than a "silencer," and Section 923(i) unambiguously applies only to "firearms" that are "weapons," or the "frame or receiver" thereof. Second, Section

14

923(i) provides that the serial number must be engraved "on the receiver or frame" yet, as Appellants have explained, a silencer does not have a "frame or receiver." *See* Opening Br. 28–29. Indeed, Section 921(a)(3)(B)'s language "the frame or receiver *of any such weapon*" clearly refers back to subsection (A)'s "weapon," not forwards to subsection (C)'s "firearm muffler or firearm silencer." Likewise, Section 921(a)(25)'s definition of "firearm silencer" contains no mention of a "frame or receiver."

Second, while 26 U.S.C. §5842(a) of the National Firearms Act *does contain* a requirement that silencers be marked, it conspicuously *does not mandate where* they must be marked. Certainly, Congress was aware that it could require silencers be marked in a specific location (indeed, Section 923(i) contains a location-specific requirement for guns), but Congress has not chosen to enact such a requirement.

Third, Section 923(i) by its terms applies to "licensed importers and licensed manufacturers," which Section 921(a)(9) and (10) define to be "any such person licensed under the provisions of this chapter." An "importer" or "manufacturer" that is licensed under "this chapter" (the GCA) is permitted to manufacture or import *only* GCA firearms, and is

15

*not* entitled to manufacture NFA firearms without paying an additional "special occupational tax" ("SOT") pursuant to 26 U.S.C. §5801 and registering as an importer, manufacturer, or dealer in NFA weapons pursuant to 26 U.S.C. §5802. In other words, Section 923(i) is inherently limited to GCA firearms, not silencers under the NFA. Moreover, silencers are generally prohibited from importation, even for a "licensed importer" who has also become a SOT under the NFA.

Fourth, Appellees' claim that the statute dictates the outcome they seek is belied by the fact that ATF has *never before taken the position* (not since 1934 or 1968) that a silencer has a frame or receiver on which it must be serialized. Thus, in addition to its numerous conflicts with the statutory text, this Court should treat ATF's novel theory with a high degree of skepticism. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (citation omitted) ("When an agency claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy,' we typically greet its announcement with a measure of skepticism."). Indeed, for many years ATF took the opposite position that "there is no specific frame/receiver to a silencer." App. 142; R. Doc. 1, at 115, ¶501. Appellees finally now acknowledge the agency's

16

prior conflicting position (Answering Br. 32), but that is not sufficient. Rather, the Final Rule must have acknowledged and explained the conflict and explained the departure. *FCC at* 515. Appellees claim that the Final Rule's "acknowledgment that no previous definition [of a silencer frame or receiver] existed" is sufficient to explain the agency's departure from prior existing policy. Answering Br. 32. This is a *non sequitur* — an agency's acknowledgment of *the absence of a thing* (no previous definition) is not the same as acknowledgment of *a contrary thing* (an agency's previous contrary statement). The Final Rule's curious new regulation of silencers is a departure from the agency's existing policy — a departure that was unacknowledged and unexplained and, for that reason alone, is invalid.

Fifth, left without any *actual* statutory authority to declare that a silencer has a "frame or receiver," or to mandate where a silencer must be marked, Appellees fall back on claims of necessity. First, they claim that a silencer "must have a frame or receiver" so that it can be marked. App. 514; R. Doc. 43, at 18; App. 15; R. Doc. 85, at 15. Of course, this is demonstrably false because silencers have been regulated — and marked — without issue since 1934, and it is only now that ATF claims they

17

"must" have specific frames and receivers.  Second, Appellees allege that there is "confusion and concern among many silencer manufacturers" on this issue.  Answering Br. 30, 31.  But neither Appellees' brief nor the Final Rule provide any *evidence* of this alleged confusion.  On the contrary, silencer manufacturers (including members and supporters of GOA and GOF) to date have been free to mark their products in any location they wish, so long as done in a manner that complies with ATF regulations as to size, depth, and content.  The Final Rule, then, is a solution in search of a problem — regulation for the sake of regulation — unnecessarily imposing cost and burden on a disfavored industry.

### C. ATF May Not Add Language to the Statute to Require Serialization of Homemade Firearms.

Appellants challenged the Final Rule's attempt to legislate entire new statutory provisions, which create a regulated class of "privately made" firearms" and a duty of firearm dealers to serialize such firearms that never — since the nation's founding or before — have been required to carry identifying information, and spawning a new federal crime for removing a serial number that federal law does not require to begin with.  Opening Br. 30–39.  In response, Appellees rely on their "general 'authority'" under the GCA, including to "regulate [a licensee's] 'records

18

of ... receipt, sale or other disposition of firearms.'" Answering Br. 26. According to Appellees, since they have the authority to require a licensee *record* a firearm's serial number (if one exists) in its records, they correspondingly have the authority to require a licensee to *create* a serial number and *engrave* it on a firearm that does not have one. *Id.* To be clear, this is Appellees' *only* claim of authority to require serialization of privately made firearms. *Id.* at 26–27. This argument fails for numerous reasons.

First, Congress has never enacted a statute requiring the serialization of privately made firearms. To the contrary, as Appellants have explained, 18 U.S.C. §923(i) clearly provides that only "licensed *importers* and licensed *manufacturers* shall identify by means of a serial number ... each firearm *imported* or *manufactured*." As Appellees are forced to admit, this statute says nothing about licensed *dealers* who, by law, *cannot* manufacture or import firearms. Answering Br. 4, 27 (emphasis added) ("Congress has required *importers* and *manufacturers*

to identify each firearm … with a serial number," but "the statute does not itself require *dealers* to serialize unmarked firearms.").[7]

Second, prior to the Final Rule, ATF simply required a dealer to record that a homemade firearm had "no serial number." *See* ATF Form 4473 ("Should you acquire a firearm that is legally not marked with a serial number … you may answer question 3 with 'NSN' (No Serial Number), 'N/A' or 'None.'").[8] It should give this Court pause that ATF has never before claimed the novel statutory authority that Appellees now claim has always existed.

Third, Appellees' tortured reading of the statute — that they may extend a requirement to dealers that Congress extended only to manufacturers and importers — conflicts with numerous principles of statutory construction: (i) that "the specific controls over the general," (ii) the "negative implication canon" or *expressio unius est exclusio alterius*,

---

[7] *Cf.* Answering Br. 8 ("Consistent with the Gun Control Act's focus on importers, manufacturers, and dealers, the Rule … requires that licensed dealers imprint a serial number on such firearms if they are taken into inventory."). But while the GCA certainly *regulates dealers* in other ways, it does not require that they serialize any firearms. ATF does not have authority to create entirely new statutory requirements for dealers simply because dealers are regulated in other ways by federal law.

[8] https://www.atf.gov/file/141941/download.

and (iii) the omitted case canon — to name a few. *See* <u>Reading Law</u> at 93, 107.

Fourth, the Final Rule glaringly does not require dealers to serialize commercially manufactured firearms that were made prior to 1968 (prior to the GCA and its serialization requirement). If it were true, as Appellees claim, that "the GCA … required *__all__* firearms to be marked," then the Final Rule would have required *__all__* firearms to be marked (but it does not). *See* Opening Br. 32–33 and n.16.

ATF cannot be allowed to transform its general authority to regulate recordkeeping into a substantive provision that a firearms dealer physically serialize privately made firearms that come into its possession. If Congress intended that dealers would, could, or should serialize firearms, Congress would have said so.

### D. ATF May Not Provide Post Hoc Rationalization for the Final Rule's Constitutionality.

Appellants argued that the Final Rule is invalid because it was justified based on a judge-empowering, interest balancing test that was foreclosed by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and again rejected by the Court in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Plaintiffs' Memorandum in

Appellate Case: 22-2812     Page: 26     Date Filed: 12/21/2022 Entry ID: 5229342

Support of Motion (App. 476-77; R. Doc. 14-1, 12-13). Appellees seemingly admit as much. Answering Br. 35 (conceding the Rule "cites and applies case law from federal courts employing a means-end scrutiny analysis that *Bruen* rejected"). Since the agency admits it applied the wrong legal standard (indeed, one that conflicts with the Second Amendment), the Final Rule is therefore an "abuse of discretion" and "not in accordance with law." *See* States' Br. 24–32; *Ojo v. Garland*, 25 F.4th 152, 164 (2d Cir. 2022) ("[P]recedent holds that the failure to provide sufficient reasoning under the proper legal standard is an abuse of discretion. ... [I]t is also 'manifestly contrary to the law.'").

In response, Appellees claim that this Court should apply "the 'rule of prejudicial error'" found in 5 U.S.C. §706, arguing that Appellants have not definitively shown that the Final Rule's error prejudiced them. Answering. Br. 33. Practicing by headnote, Appellees cite this Court's opinion in *Panhandle Coop. Ass'n v. EPA*, 771 F.2d 1149 (8th Cir. 1985), which stands for an entirely different proposition — that "the aggrieved party must show that it was prejudiced *by the delay*." *Id.* at 1153 (emphasis added). With respect to Appellees' right-result-wrong-reason claim made here, "the APA's 'prejudicial error' rule ... requires only a

22

*possibility* that the error would have resulted in *some* change in the final rule." *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 521 (D.C. Cir. 1983); *see also Shinseki v. Sanders*, 556 U.S. 396, 410 (2009); *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1031 n.27 (D.C. Cir. 1978) ("[I]t is our place only to review actions actually and properly taken by the Agency. If that action is improper, and if we cannot be sure that under the correct procedures the Agency would have reached the same conclusion, we cannot characterize the defect as harmless.").

Despite this, Appellees argue the Final Rule has not been established to be prejudicial, on the erroneous theory that "Plaintiffs never develop an argument that the Rule violates the Second Amendment." Answering Br. 13; *see also id.* at 33. Not so. To start, Appellants' Complaint makes a claim directly under the Second Amendment arguing, *inter alia*, that the Final Rule infringes the protected right to acquire firearms. Compl. ¶¶657–76; *see also id.* ¶¶267, 345 n.49, 403, 644. (App. 173-176; R. Doc. 1, 146-149; *see also* App. 91; R. Doc. 1, 64; App. 124; R. Doc. 1, 97; App. 171; R. Doc. 1, 144). Moreover, Appellants' Opening Brief devotes considerable attention to the Second Amendment issue, explaining that "the Final Rule unconstitutionally

Appellate Case: 22-2812     Page: 28     Date Filed: 12/21/2022 Entry ID: 5229342

interferes with Plaintiffs' Second Amendment rights."  Opening Br. 45 (arguing that the serialization and registration provisions of the Final Rule violate the Second Amendment and explaining how Plaintiffs are deprived of the ability to acquire parts to manufacture firearms); *see also* States' Br. 25–26 (providing extensive analysis of the *Bruen* framework and noting that "there is no historical tradition for the Final Rule's regulations").  In other words, Appellants have shown precisely how they have been prejudiced by the Final Rule's conflict with *Bruen* — their Second Amendment rights have been violated.

In addition to this weight of legal authority supporting Appellants' position here, there are other factors which also weigh in favor of invalidating the Final Rule, or at least remanding the matter to the agency for reconsideration of the Final Rule in light of *Bruen*.

First, since *Bruen* was decided. multiple cases around the country have been remanded by circuit courts to district courts for reconsideration in light of *Bruen*.  *See Young v. Hawaii*, 45 F.4th 1087 (9th Cir. 2022); *Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022); *Ass'n of New Jersey Rifle & Pistol v. Grewal*, (19-3142) (3rd Cir. 2022), Document 147.  It would be a strange thing indeed for this Court to affirm the Final

Rule (issued by an administrative agency) despite its obvious conflict with *Bruen*, while other cases are being remanded (to district courts) to address *Bruen*'s Second Amendment framework.

Second, although a higher court can affirm a lower court "on any basis supported by the record," *Saulsberry v. St. Mary's Univ.*, 318 F.3d 862, 866 (8th Cir. 2003), there is no "record" in this case supporting the constitutionality of the Final Rule under *Bruen*. Indeed, the Final Rule does not even begin to conduct the historical analysis that *Bruen* requires, much less does ATF provide even a single historical analogue[9] showing a tradition of regulating homemade firearms, requiring serial numbers, demanding records be kept in perpetuity — or any of the

_____

[9] Appellees argue unpersuasively that, because "the Rule *does not prevent* any qualified individual from making, buying, or possessing firearms, it *does not infringe* Second Amendment rights, and therefore it need not be justified by historical analogy." Answering Br. 35 (emphasis added). Appellees provide not a single authority for this claim that *Bruen* does even not apply until a right has been not merely *infringed* but *entirely extinguished*. By Appellees' logic, a yearlong delay in obtaining a concealed carry permit (*see, e.g.*, *Antonyuk v. Hochul*, 2022 U.S. Dist. LEXIS 201944, at *28 (N.D.N.Y. Nov. 7, 2022)), or a law requiring a government permit to purchase a firearm (*see, e.g.*, Order Granting Preliminary Injunctive Relief—Ballot Measure 114, *Arnold v. Brown*, No. 22CV41008 (Or. Cir. Ct. Dec. 16, 2022)), would not be subject to the *Bruen* analysis, because such restrictions "do[] not prevent" a person from bearing arms. Appellees' extreme claim that *Bruen*'s analysis does not even apply to the Final Rule must be rejected.

numerous other promulgations in the Final Rule. Although Appellees' brief claims that the Final Rule is supportable under *Bruen*, there simply is no evidence in the "record" to that effect.

Nor do Appellees provide a *Bruen* analysis in their brief to this Court.[10] Rather, they point to a single conclusory statement in the Final Rule made well before *Bruen* was decided, alleging that the regulations do not infringe Second Amendment rights. Answering Br. 13–14 (citing 87 Fed. Reg. at 24,676). But this is nothing more than an assertion, not a *Bruen* analysis. And as Appellants have shown, the agency's analysis leading to that conclusion is wrong.

Making matters worse, not only did the agency misinterpret and misapply the Second Amendment in the Final Rule, but also the district court completely misunderstood *Bruen* in its opinion below. App. 16-17; R. Doc 85, 16-17 (finding that the Second Amendment, as interpreted by *Bruen*, requires nothing more than that the right to keep and bear arms "not be arbitrarily denied," reasoning akin to rational basis review, a

---

[10] In any event, any attempt now to explain how the agency's position finds any support in *Bruen* would be an impermissible post hoc rationalization.

standard that *no court* — before or after *Bruen* —applied to Second Amendment rights); *see also* States' Br. 7, 29–30.[11]

Third, much like a circuit court is "a court of 'review ... not first view'" with respect to decisions of district courts, *United States v. Nunez-Hernandez*, 43 F.4th 857, 859 (8th Cir. 2022), a district court is a "court of review" when it reviews agency actions. *See Koi Nation of N. Cal. v.*

---

[11] Appellees separately attempt to justify the Final Rule's conflict with *Bruen* by claiming the regulations it promulgates are merely "laws imposing conditions and qualifications on the commercial sale of arms," and thus *per se* permissible under *Heller* — meaning that *Bruen* does not even apply. *See* Answering Br. 33–35 ("[T]here is no need for further analysis."). As a preliminary matter, the Final Rule cannot be simply characterized as mere commercial regulation. Appellants have explained that the Final Rule creates requirements for "*privately* made firearms" when they are merely cleaned, accessorized, fitted with a barrel, or painted. These activities have nothing to do with the "commercial sale of arms." Moreover, the "commercial sale" language from *Heller* is not a magic talisman to be waved to avoid *Bruen* scrutiny, as *Heller* itself deemed commercial regulations only "*presumptively* lawful." *Heller*, 554 U.S. at 627 n.26 (emphasis added); *see* States' Br. 30–31. And, "not every regulation on the commercial sale of arms is presumptively lawful." *Rigby v. Jennings*, No. 21-1523 (MN), 2022 U.S. Dist. LEXIS 172375, at *14 (D. Del. Sept. 23, 2022). Even then, presumptions can be rebutted. Certainly, the Supreme Court has never said that such "conditions and qualifications" are *conclusively* constitutional, or otherwise *exempt* from the analytical framework that applies to *all* Second Amendment challenges. In fact, the *Heller* Court said the opposite: "[T]here will be time enough to expound upon the historical justifications [i.e., the *Bruen* test] for the exceptions we have mentioned if and when those exceptions come before us." *Heller* at 635.

Appellate Case: 22-2812     Page: 32     Date Filed: 12/21/2022 Entry ID: 5229342

*DOI*, 361 F. Supp. 3d 14, 33–34 (D.D.C. 2019) ("In APA cases ... 'the district judge sits as an appellate tribunal.' ... '[G]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard ... operate ... as appellate courts resolving legal questions.' ... [J]udicial review is limited to the administrative record...."). Yet in analyzing how *Bruen* might apply to the Final Rule, the district court impermissibly assumed the responsibility of the agency to justify the Rule, without even having the administrative record before it. In addition to conflicting with the overwhelming body of legal authority referenced above, this also raises considerable separation of powers concerns, as Congress delegates its power to executive branch agencies — not federal district courts.

For all of these reasons, "a court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act." *See, e.g.*, *NLRB v. Food Store Emps. Union, Local 347*, 417 U.S. 1, 10 n.10 (1974); *see also Nat'l Fuel Gas Supply Corp. v. FERC*, 899 F.2d 1244, 1249–50 (D.C. Cir. 1990) ("[A]n agency should

be afforded the first word on how an intervening change in law affects an agency decision pending review.").  The Final Rule should be sent back to the agency to try again.

### E. ATF May Not by Regulation Adopt Its Arbitrary and Capricious Classification System.

Appellants have challenged the Final Rule's regulations formalizing ATF's existing, horribly flawed classification system, which now mandates that requests for classification be made "under the penalties of perjury."  Opening Br. 39–43.  As Appellants explained, ATF's guidance documents are not made public, its employees utilize no standard operating procedures, and ATF's existing classification system already has discriminated against unfavored technology and requesters, routinely issuing conflicting guidance on nearly identical items, all the while reserving the agency's right to unilaterally change its opinion at any time.  *Id.* at 41.

In response, Appellees claim that, "even if [Appellants'] criticism [is] true," the Final Rule "is explicitly aimed at correcting perceived shortfalls in ATF's process."  Answering Br. 46.  But that is not the case, as the Final Rule does *nothing* to address Appellants' (or anyone else's) criticisms of the existing ATF classification process:  The Final Rule does

29

not make ATF classification letters public, does not establish standard operating procedures for ATF testing, and does not even guarantee ATF will *ever* respond to a request for classification. In fact, the Final Rule *explicitly rejected* such a suggestion. *See* 87 Fed. Reg. at 24,709–10 (rejecting comments advocating "some … reasonable time frame" because "there is no statutory requirement … for ATF to act upon any such requests"). In other words, the Final Rule codifies *as law* the agency's ability to play favorites, pick desired outcomes, issue conflicting decisions based on whim, or entirely refuse to issue guidance when requested. Appellants do not merely "lob a generalized critique," but instead challenge the inherently arbitrary and capricious nature of the process ATF has chosen to promulgate. Appellees are certainly correct that the ATF classification process is a "voluntary" process, but that does not permit the agency to act unlawfully and unconstitutionally when operating the process it has created.

## CONCLUSION

For the reasons stated, this Court should reverse the district court's denial of Plaintiffs' motion for preliminary injunction, and remand to the

Appellate Case: 22-2812    Page: 35    Date Filed: 12/21/2022 Entry ID: 5229342

district court with instructions to issue an immediate injunction of the

Final Rule.

      Respectfully submitted,

Date: December 20, 2022

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh (MS # 102784)
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
wjo@mindspring.com

*Counsel for Morehouse Enterprises, LLC d/b/a Bridge City Ordnance,*
*Eliezer Jimenez, Gun Owners of America, Inc., and Gun Owners*
*Foundation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(b) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 6,484 words as determined by the word-counting feature of Microsoft Word 365.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 365 in 14-point proportionally spaced Century Schoolbook font.

And this brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Kaspersky Antivirus and no virus was detected.

Appellate Case: 22-2812    Page: 37    Date Filed: 12/21/2022 Entry ID: 5229342

## CERTIFICATE OF SERVICE

I certify that on December 20, 2022, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

Appellate Case: 22-2812    Page: 38    Date Filed: 12/21/2022 Entry ID: 5229342