**Case Nos. 22-2812 & 22-2854**

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

MOREHOUSE ENTERPRISES, LLC d/b/a BRIDGE CITY ORDNANCE; ELIEZER JIMENEZ; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION,
*Plaintiffs-Appellants*

STATE OF ARIZONA; STATE OF WEST VIRGINIA; STATE OF ALASKA; STATE OF ARKANSAS; STATE OF IDAHO; STATE OF INDIANA; STATE OF KANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE MISSOURI; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF TEXAS; STATE OF UTAH; and STATE OF WYOMING,

*Plaintiffs-Appellants*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; and STEVEN M. DETTELBACH as the DIRECTOR OF ATF,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the District of North Dakota
The Honorable District Court Judge Peter D. Welte
Case No. 3:22-cv-116

---

## PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING EN BANC

---

Robert J. Olson
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
wjo@mindspring.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us

*Counsel for Morehouse Enterprises, LLC d/b/a Bridge City Ordnance, Eliezer Jimenez, Gun Owners of America, Inc., and Gun Owners Foundation*

AUSTIN KNUDSEN
 *Attorney General of Montana*
CHRISTIAN B. CORRIGAN
 *Solicitor General*
PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
MONTANA DEPARTMENT
 OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401
406-444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

PATRICK MORRISEY
 *Attorney General of West Virginia*
LINDSAY SEE
 *Solicitor General*
MICHAEL R. WILLIAMS
 *Principal Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA
 ATTORNEY GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
681-313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for Plaintiff-Appellants State of Montana and State of West Virginia*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT AND INTRODUCTION ................................................ 1

REASONS FOR GRANTING EN BANC REVIEW .............................. 3

I. . The Panel Failed to Engage with Plaintiffs' Allegations of Irreparable Harm ................................................................................................................ 3

    A.    The Panel Failed to Engage with Plaintiffs' Allegations of Second Amendment Harms. ................................................................ 4

        i.    The Final Rule's Serialization, Registration, Background Check, and Recordkeeping Requirements Violate Plaintiffs' Second Amendment Rights. ..................................................................................... 6

        ii.    The Final Rule's Creation of a Prohibited National Gun Registry Violates Plaintiffs' Second Amendment Rights. ............... 10

        iii.    The Final Rule Creates New Federal Crimes that Place Plaintiffs at Risk of Prosecution for Previously Lawful Activities. . 12

    B.    Plaintiffs Will Suffer Economic Harm ....................................... 13

    C.    The States Will Suffer Harm ...................................................... 17

CONCLUSION ................................................................................... 19

Appellate Case: 22-2812    Page: 3    Date Filed: 10/06/2023 Entry ID: 5324044

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Adam-Mellang v. Apartment Search*, 96 F.3d 297 (8th Cir. 1996) ...... 13

*Antonyuk v. Nigrelli*, 143 S. Ct. 481 (2023) .................................. 3

*Baird v. Bonta*, 2023 U.S. App. LEXIS 23760
(9th Cir. Sept. 7, 2013) ............................................... 2, 6, 10

*Berks v. United States*, 825 F.2d 1262 (8th Cir. 1987) .................... 4

*Citizens Coal Council v. Babbitt*, 2002 WL 35468435
(D.C. Cir. June 5, 2002) ..................................................... 16

*Colo. Sec. Consultants, LLC v. Signal 88 Franchise Grp., Inc.*,
2017 U.S. Dist. LEXIS 38803 (D. Neb. Mar. 17, 2017) ............. 15

*Davis v. FEC*, 554 U.S. 724 (2008) ............................................... 19

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ............................. 15

*Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018) ................. 18

*Gray v. City of Valley Park*, 567 F.3d 976 (8th Cir. 2009) .............. 18

*Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806
(8th Cir. 2022) ................................................................ 18

*In re SuperValu, Inc., Consumer Data Sec. Breach Litig.*,
870 F.3d 763 (8th Cir. 2017) ............................................. 18

*Liti v. Comm'r*, 289 F.3d 1103 (9th Cir. 2002) ............................... 4

*Maryland v. King*, 567 U.S. 1301 (2012) ...................................... 17

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................ 2, 4

Appellate Case: 22-2812    Page: 4    Date Filed: 10/06/2023 Entry ID: 5324044

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ......... 2

*Packard Elevator v. Interstate Com. Comm'n*, 782 F.2d 112
    (8th Cir. 1986) ................................................................. 15

*Pub. Citizen v. DOJ*, 491 U.S. 440 (1989) ..................................... 3

*Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151
    (8th Cir. 2008) ........................................................... 18, 19

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ........................................ 3

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC,*
    2023 U.S. App. LEXIS 16295 (Fed. Cir. June 28, 2023) ........... 4

*United States v. DeCoteau*, 186 F.3d 1008 (8th Cir. 1999) ................. 4

*West Virginia v. EPA*, 2023 U.S. Dist. LEXIS 64372
    (D.N.D. Apr. 12, 2023) ................................................... 15

## Constitutions

U.S. Const. amend. II ......................................................... *passim*

U.S. Const. art. III ....................................................... 17, 19

## Statutes

Alaska Stat. § 44.99.500(b) ................................................... 17

Kan. Stat. § 50-1204(a) ....................................................... 17

## Rules

Fed. R. App. P. 35(a)(2) ....................................................... 2

Appellate Case: 22-2812    Page: 5    Date Filed: 10/06/2023 Entry ID: 5324044

**Other Authorities**

*Regulatory Impact Analysis and Final Regulatory Flexibility Analysis* (Apr. 2022) ........................................................ 16

Appellate Case: 22-2812    Page: 6    Date Filed: 10/06/2023 Entry ID: 5324044

## STATEMENT AND INTRODUCTION

This case concerns a sweeping omnibus Rule that destroys the time-honored American tradition of private firearm manufacture. In it, the ATF extended a law applicable to a firearm's "frame or receiver" to *incomplete and unfinished*, non-frame, non-receiver parts. At the same time, ATF created a backdoor federal registry of all newly compelled firearms transactions. ATF's Rule violates the Gun Control Act, the Firearm Owners' Protection Act, the Administrative Procedure Act, and the U.S. Constitution. Plaintiffs—a broad coalition of States, gun owners, and businesses—were compelled to sue.

Despite the Rule's blatant rewrite of numerous federal statutes, the district court denied preliminary relief. And two months ago, a panel of this Court affirmed, concluding—with only minimal analysis—that Plaintiffs failed to show that they would suffer irreparable harm. But the panel never engaged with Plaintiffs' substantial evidence and allegations, which showed the serious irreparable harms they continue to suffer because of this Rule. The panel erred, and the Court should review this case *en banc* for two reasons.

Appellate Case: 22-2812     Page: 7     Date Filed: 10/06/2023 Entry ID: 5324044

*First*, the challenged Rule conflicts not only with several federal statutes, but also with the Supreme Court's recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* reaffirms the Second Amendment's unyielding importance. As Plaintiffs explain below, when the federal government infringes a constitutional right, irreparable harm necessarily results. But in declining to address whether Plaintiffs were likely to show such a constitutional violation, the panel overlooked a critical part of the analysis. *See Baird v. Bonta*, 2023 U.S. App. LEXIS 23760, at *6-7 (9th Cir. Sept. 7, 2013). By extension, this case presents questions of exceptional importance with nationwide implications for the right to keep and bear arms (and the proper interpretation of numerous provisions of federal law). *See* Fed. R. App. P. 35(a)(2). As this Court well knows, Second Amendment issues have been top of mind for courts across the country in recent years.

*Second*, this Court's *en banc* review is needed to ensure that Plaintiffs' case is given the "careful review and a meaningful decision" to which they are "entitle[d]." *Nken v. Holder*, 556 U.S. 418, 427 (2009). At least one judge of this Court already found that Plaintiffs properly alleged irreparable harm, as that judge would have granted Plaintiffs'

Appellate Case: 22-2812     Page: 8     Date Filed: 10/06/2023 Entry ID: 5324044

motion for stay pending appeal.  *See* October 4, 2022 Order, EntryID: 5204710.  Yet despite Plaintiffs' *prima facie* showing of harm, the panel issued an opinion that comes close to a summary order.  Unexplained and underexplained orders suggest that a court has exercised "will instead of judgment" and are insufficient when it comes to injunctive relief.  *Pub. Citizen v. DOJ*, 491 U.S. 440, 471 (1989) (Kennedy, J., Rehnquist, C.J., O'Connor, J., concurring).  The Court therefore should rehear this case.

## REASONS FOR GRANTING EN BANC REVIEW

### I. The Panel Failed to Engage with Plaintiffs' Allegations of Irreparable Harm.

The panel failed to discuss any of Plaintiffs' many allegations of irreparable harm, let alone explain why those allegations are legally insufficient.  Rather, the panel's opinion provided only general and conclusory findings—devoid of analysis—that Plaintiffs had not sufficiently alleged that they will suffer irreparable harm.

The panel's summary approach is reason enough to revisit its decision, as authority far and wide says more is required.  For example, the Supreme Court has criticized opinions devoid of meaningful analysis. *See Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006); *Antonyuk v. Nigrelli*, 143 S. Ct. 481, 481 (2023) (Alito, J., and Thomas, J., statement respecting the

Appellate Case: 22-2812     Page: 9     Date Filed: 10/06/2023 Entry ID: 5324044

denial of the application to vacate stay). This Court, too, has chastised lower courts who failed to explain their conclusions. *See Berks v. United States*, 825 F.2d 1262, 1263 (8th Cir. 1987) (condemning the lower court's "bald conclusion"); *United States v. DeCoteau*, 186 F.3d 1008, 1011 (8th Cir. 1999). Other courts have said much the same. *See, e.g.*, *Liti v. Comm'r*, 289 F.3d 1103, 1105 (9th Cir. 2002); *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, 2023 U.S. App. LEXIS 16295, at *25-26 (Fed. Cir. June 28, 2023). These decisions recognize that a court should explain the reasons for its conclusions so that parties can understand why the court decided as it did—and any court of higher review can "check the math."

The panel's decision that Plaintiffs failed to allege irreparable harm, issued without any meaningful analysis of Plaintiffs' many allegations and arguments, deprived Plaintiffs of the "careful review and a meaningful decision" to which they were "entitle[d]." *Nken*, 556 U.S. at 427.

## A. The Panel Failed to Engage with Plaintiffs' Allegations of Second Amendment Harms.

The panel's one-paragraph discussion rejecting Plaintiffs' "Second Amendment harm" (Op. *8-9) did not refer to any allegation in Plaintiffs'

154-page Complaint (App. 28; R. Doc. 1), their 23 pages of supporting affidavits (App. 265; R. Doc. 1-27, App. 445; R. Doc. 1-60, App. 450; R. Doc. 1-61), Plaintiffs' Motion for Preliminary and/or Permanent Injunction (App. 464; R. Doc. 14-1), or even Plaintiffs' briefs filed in this Court (Private Plaintiffs-Appellants' Opening Brief, EntryID: 5212365 (Oct. 27, 2022) ("Opening Br."); Private Plaintiffs-Appellants' Reply Brief, EntryID: 5229342 (Dec. 21, 2022)). Nor did the panel reference, discuss, or affirm any of the district court's conclusions as to irreparable harm. *See* App. 1; R. Doc. 85, at 24-25.

Rather, the panel declared that "plaintiffs have not clearly shown how the Final Rule will prevent them from engaging in constitutionally protected conduct." Op. *8. As to Plaintiff Morehouse, the panel concluded—without any analysis—that it was "unsure what behavior [Morehouse] wishes to engage in, as an LLC, that is protected by the Second Amendment." *Id.* And with respect to Plaintiffs Jimenez, GOA, and GOF, the panel concluded—again, without any analysis—that it likewise was "unsure how the Final Rule—that creates no new obligations on individuals—will prevent individuals from engaging in protected Second Amendment activity." *Id.*

5

The panel acknowledged that, "in most instances, constitutional violations constitute irreparable harm." *Id.* And the panel promised that its "conclusion ... d[id] not speak to the merits of a Second Amendment claim...." *Id.* Even so, the panel still found that Plaintiffs had not sufficiently *alleged* that they are suffering irreparable harm to their Second Amendment rights. But if Plaintiffs are likely to succeed on the merits of any of their Second Amendment claims, they *necessarily demonstrated* irreparable harm. *See Baird*, 2023 U.S. App. LEXIS 23760, at *6-7; *see also id.* at *8 (court may not "deny a motion for a preliminary injunction without analyzing the plaintiff's likelihood of success" when "a plaintiff alleges a constitutional violation"). In any event, Plaintiffs' pleadings and briefing show their harm.

### i. The Final Rule's Serialization, Registration, Background Check, and Recordkeeping Requirements Violate Plaintiffs' Second Amendment Rights.

The allegations here are substantial—Plaintiff Jimenez is a good example. He explained that, before the Final Rule, he privately manufactured his own firearms ("specifically handguns") for personal use, utilizing "unregulated parts" purchased from unlicensed retailers. App. 446; R. Doc. 1-60, at 2, ¶¶4-6. He desires and intends to continue

6

that activity in the same manner as before, and would do so "[b]ut for the Final Rule." *Id.* ¶¶4, 9. But, because of the Final Rule, those same previously unregulated, unserialized, incomplete, and unfinished frame or receiver precursors Jimenez previously purchased and utilized in the manufacturing process are now regulated as "firearms." App. 77, 82, 86, 88-89, 90-91; R. Doc. 1, at 50, 55, 59, 61-62, 63-64, ¶¶205, 207, 228, 250, 261, 266, 267-68. Those previously unregulated parts now must be manufactured, serialized, and transferred by federally licensed manufacturers and dealers, with all the attendant requirements of federal law. App. 447, 448; R. Doc. 1-60, at 3, 4, ¶¶12, 18. The Final Rule thus "mak[es] it difficult (if not impossible) for the average, law-abiding gun owner to manufacture a homemade firearm." Opening Br. at 7; *see also id.* at 44.

First, although Jimenez's prior homemade firearms do not contain any parts with serial numbers (App. 447; R. Doc. 1-60, at 3, ¶11), under the Final Rule some of those same parts now must be serialized by their manufacturer (87 Fed. Reg. at 24739), while any existing unserialized firearms Jimenez already possessed must be serialized by a dealer should he bring the firearm in for customization or repair, something he has

Appellate Case: 22-2812    Page: 13    Date Filed: 10/06/2023 Entry ID: 5324044

done and intends to continue to do (App. 446-47; R. Doc. 1-60, at 2-3, ¶10).
*See* Opening Br. at 36. Second, the newly-required transfer of previously
unregulated parts through a licensed manufacturer and dealer, as
serialized firearms, means that Jimenez must "fill out forms with [his]
personal information … [and] submit [him]self to an intrusive federal
background check." App. 447; R. Doc. 1-60, at 3, ¶15; 87 Fed. Reg. at
24653. Third, whereas Jimenez previously bought precursor firearm
components to privately manufacture personal firearms *anonymously*,
without government control and oversight, he now is required to use a
licensed dealer. That new requirement means that information about
him and his unfinished firearm components (make, model, serial number,
along with his name, address, *etc*.) will be recorded, maintained, and kept
in perpetuity by a firearms dealer—subject to warrantless inspection, at
any time, by ATF. App. 446, 447-48; R. Doc. 1-60, at 2, 3-4, ¶¶9, 15; *see*
Opening Br. at 45; *see also id.* at 46-47.

Of course, Jimenez is only one example; he is not the only gun owner
represented in this litigation. App. 450-51; R. Doc. 1-61, at 1-2, ¶¶2-3;
Opening Br. at 45. Plaintiffs GOA/GOF alleged that, like Jimenez, many
of their members with whom they have communicated (App. 453; R. Doc.

8

1-61, at 4, ¶18), and who are represented in this case, routinely privately manufacture their own firearms, at home, for personal use. *Id.* ¶¶9, 19-20. Many of these persons also have their privately made, unserialized firearms worked on by firearm dealers, for "finishes," for "installing various accessories," and for "repair, cleaning, or maintenance…." *Id.* ¶24. GOA/GOF explained that the Final Rule now purports to criminalize these same lawful activities unless gun owners submit to the Rule's "serialization and recordkeeping" requirements for their privately made firearms (*id.* ¶¶25, 28), which infringes their Second Amendment rights, creating irreparable harm (*id.* ¶¶24-28). The panel's opinion addressed none of this.

In short, Plaintiffs explained how the Final Rule's additional requirements infringe their right to keep and bear arms. App. 446, 448; R. Doc. 1-60, at 2, 4, ¶¶9, 16; Opening Br. at 45 ("Plaintiffs are deprived of access to the components, parts, and materials to manufacture their own firearms," which "unconstitutionally interferes with Plaintiffs' Second Amendment rights"). Plaintiffs clearly alleged that (i) they intend to engage in each specific activity, (ii) the Final Rule would restrict or foreclose each activity by requiring additional hurdles and

impediments, and (iii) each of these new impediments to private firearm manufacture violates Second Amendment rights. Yet in the face of these numerous and specific allegations, the panel professed to be "unsure."[1] Op. *8.

> ii. **The Final Rule's Creation of a Prohibited National Gun Registry Violates Plaintiffs' Second Amendment Rights.**

The panel also overlooked how a new national gun registry will cause irreparable Second Amendment harm by unlawfully eliminating the ability to anonymously purchase incomplete, unfinished, and unserialized firearm components with which to privately manufacture firearms. App. 454, 455; R. Doc. 1-61, at 5, 6, ¶¶20, 26-27; Opening Br. at 6-7, 45. The Rule further unlawfully requires dealers to serialize and keep records about privately made firearms on which they work (App. 455-56; R. Doc. 1-61, at 6-7, ¶¶28-29; Opening Br. at 8, 45) and thereafter

---

[1] One might guess that the panel implicitly concluded that (i) there is no Second Amendment right to anonymity in making one's own personal firearm, and that (ii) serialization, (iii) background checks, (iv) recordkeeping, and (v) warrantless search and seizure of those records by ATF do not infringe Second Amendment rights. But the panel *disclaimed* reaching such conclusions, noting that it did "not speak to the merits of a Second Amendment claim later in this litigation." Op. *8. *But see Baird*, 2023 U.S. App. LEXIS 23760, at *6-7.

Appellate Case: 22-2812    Page: 16    Date Filed: 10/06/2023 Entry ID: 5324044

to keep those records forever.  Together, these requirements effectively create a national gun registry (App. 120; R. Doc. 1, at 93, ¶379; States' Opening Br. at 20-23) of that sort that is explicitly prohibited by statute (App. 177-78; R. Doc. 1, at 150-51, ¶¶684-87).  That registry irreparably harms Plaintiffs' Second Amendment rights .  *See id.* ¶¶403, 602-18; App. 446-48; R. Doc. 1-60, at 2-4, ¶¶8-15; *see also* Op. *5 (acknowledging that Plaintiffs brought this claim); States' Opening Br. at 20-23.

Plaintiffs explained that they "will be … unable to exercise of [their] Second Amendment right to manufacture [their] own firearm[s] free from government oversight and control, without being forced into a government-controlled system of firearm records…." *See* States' Opening Br. at 35; Opening Br. at 44-45.  But the panel did not engage with these claims.  *See* Op. *9 ("we are left unsure").  At the very least, one would expect the panel to explain why allegations like these are insufficient to establish irreparable harm.  Perhaps the panel could have concluded that the Final Rule *does not create* a national gun registry, that any such registry *does not violate* the statute, or that a government registration of firearms and firearm owners *does not offend* the Second Amendment.  Or that, even if a Second Amendment violation occurred, it *does not amount*

11

to a level of irreparable harm sufficient to justify preliminary injunctive relief. But the panel did not reach these conclusions. The Court should rehear this case to address the facts and allegations that are present here.

### iii. The Final Rule Creates New Federal Crimes that Place Plaintiffs at Risk of Prosecution for Previously Lawful Activities.

Plaintiffs also alleged risk of criminal prosecution for their previously lawful activities. But again, the panel did not even acknowledge that Plaintiffs made these claims.

Plaintiffs' logic is straightforward. Plaintiffs no longer can manufacture, sell, or purchase unfinished and unserialized frames and receivers free from background checks and recordkeeping, without "threats of criminal liability…." App. 446; R. Doc. 1-60, at 2, ¶7; App. 457, 461; R. Doc. 1-61, at 8, 12, ¶¶38, 66; Opening Br. at 47 n.25; *id.* at 47 ("Jimenez … cannot confidently purchase parts without exposing himself to potential criminal liability"). But beyond that, Plaintiffs "possess common household items that, in theory, could be manufactured into a suppressor" (App. 458; R. Doc. 1-61, at 9, ¶43), and the Final Rule's new definition of "complete muffler or silencer device" means that these

12

people are committing felony crimes.  Opening Br. at 25-26; App. 131; R. Doc. 1, at 104, ¶439 and generally at App. 127-32; R. Doc. 1, at 100-05, ¶¶419-44. Thus, "harm results because … uncertainty—paired with ATF's intent to enforce the Rule—compels an unwanted change in behavior out of fear of criminal sanction."  Opening Br. at 49 (citing *Adam-Mellang v. Apartment Search*, 96 F.3d 297, 301 (8th Cir. 1996)).

The panel found that these harms were illusory, but did not reveal why.  Here again, the panel *could have* opined that Plaintiffs' reading of the Final Rule is incorrect, but it chose not to reach the merits of Plaintiffs' claims.  Especially in light of that choice, Plaintiffs more than sufficiently alleged the risks of felony prosecution to which the Final Rule exposes them.

## B. Plaintiffs Will Suffer Economic Harm.

Plaintiffs also alleged various unrecoverable (and therefore irreparable) economic harms that flow from the Final Rule.

Take the reliance costs.  The Final Rule "reverses … scores of classification letters" on "partially complete or unassembled frames or receivers."  Opening Br. at 6-7.  The organizational Plaintiffs explained how some of their members hold ATF approval letters that the Final Rule

revoked. *See* App. 34-35, 98-99, 146; R. Doc. 1, at 7-8, 71-72, 119, ¶¶9.a, 293-94, 519; App. 452, 456, 461-62; R. Doc. 1-61, at 3, 7, 12-13, ¶¶8, 31-32, 64-68; App. 483; R. Doc. 14-1, at 19. Revocation of an ATF approval letter means one can no longer sell certain products, leading to immediate elimination of sales (and thus loss of revenue), causing irreparable financial harm. *See* App. 488-89; R. Doc. 14-1, at 24-25 ("companies will be forced to … stop selling products or combinations of products"). If ATF's declaration that products sold by Plaintiffs' members *cannot lawfully be sold* does not constitute *per se* irreparable economic harm, it is hard to see what would.

Yet the panel gave short shrift to these unrecoverable monetary injuries, imposing a new, higher standard for economic harms. Although acknowledging Plaintiffs' claims that the "scope of the Final Rule will be costly to businesses and lead to fewer sales of firearms," the panel faulted Plaintiffs for "fail[ing] to explain how the" Rule "will impact their overall business model in a way that will result in closures." Op. *9. *See* App.707; Final Rule at 24,718 ("[gun] companies… could dissolve their business"); App.623; NPRM at 27,736 ("there would be a significant [economic] impact" on non-FFL manufacturers); App.71, 78-102; R. Doc. 1 at 44, 51-

14

75; App.728; Final Rule at 24,739. But even if the inability to sell one's products that ATF has declared illegal does not lead to *complete closures*, "substantial loss of business and … bankruptcy" still constitutes classic irreparable harm. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *Colo. Sec. Consultants, LLC v. Signal 88 Franchise Grp., Inc.*, 2017 U.S. Dist. LEXIS 38803, at *8 (D. Neb. Mar. 17, 2017) (citing *Packard Elevator v. Interstate Com. Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986).

The panel also concluded that Plaintiffs failed to explain their "compliance costs" stemming from the Rule "in definite enough terms to show the extent of any harm is 'actual and not theoretical.'" Op. *9. *But see West Virginia v. EPA*, 2023 U.S. Dist. LEXIS 64372, at *50 (D.N.D. Apr. 12, 2023) (finding compliance costs can constitute irreparable harm). But Plaintiffs alleged that their members include "distributors and retailers of unregulated firearm parts (including '80% frames and receivers')." App. 451; R. Doc. 1-61, at 2, ¶7. Under the Final Rule, these persons have only limited options for complying—and all impose costs, as *ATF itself admits*. First, they could "obtain[] a federal firearms license" and "engage in recordkeeping and conduct background checks." App. 77; R. Doc. 1, at 50, ¶203, 87 Fed. Reg. at 24731; Opening Br. at 46 (Final

Rule "has disturbed and disrupted (if not ended entirely) those engaged in the business of selling unregulated firearm parts"). The Final Rule estimated the up-front cost to obtain such a license at $458 per license application.[2] For those who choose not to be licensed, ATF says they either may "dispose of their inventory" (and forfeit a product line) or "dissolve their business."[3] *See also* App. 36-37; R. Doc. 1, at 9-10, ¶10. No matter which path these persons take, by ATF's own admission, they are irreparably harmed. *See* Opening Br. at 51.

Once again, the panel seems to have mistakenly imposed a higher standard of proof, faulting Plaintiffs for not having predicted an exact dollar amount of harm that would befall them. Op. *9. Yet the Final Rule itself states that ATF "can make estimates … but it cannot determine with complete specificity the actual outcomes of the final rule." App. 37; R. Doc. 1, at 10, ¶10 n.3; *see Citizens Coal Council v. Babbitt*, 2002 WL 35468435, at *1 (D.C. Cir. June 5, 2002) ("substantial uncertainty" in federal regulatory scheme constituted irreparable harm).

---

[2] *Regulatory Impact Analysis and Final Regulatory Flexibility Analysis* ("RIA"), at 73 (Apr. 2022), https://tinyurl.com/32dns8ps.

[3] RIA, *supra* note 2, at 72; *see also id*. at 32.

## C. The States Will Suffer Harm.

Perhaps the most unusual part of the panel's decision was its rejection of the Plaintiff States' irreparable harms. Relegating discussion to a short footnote, the panel concluded that it was unnecessary to address whether the States' harms are irreparable because the alleged harms do not establish Article III standing. Op. *8 n.5 (reciting the "several harms [the States] claim warrant standing"). But as the States explained, some States have laws that affirmatively protect the private manufacture of firearms that the Rule prohibits. *See* Kan. Stat. § 50-1204(a); Alaska Stat. § 44.99.500(b). By interfering in the sovereign powers embodied in those laws, Defendants have irreparably harmed those States. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *see also Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018) ("Loss of sovereignty is an irreparable harm."). The Final Rule also undermines State tax revenues—by forcing business closures—and undermines State crime-control efforts—by discouraging robust and broadly distributed

gun ownership. These harms are significant. *See* States' Opening Br. at 36-40.

The panel's quick-hit rejection of a party's standing allegations is inconsistent with typical standing analysis. In this Circuit, a "'court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor' when making a determination on standing." *Gray v. City of Valley Park*, 567 F.3d 976, 983 (8th Cir. 2009). This "[t]ypically … requires careful judicial examination of a complaint's allegations…." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008). Ultimately, though, "pleading Article III standing requires only 'general allegations of injury, causation, and redressability.'" *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811 (8th Cir. 2022); *see also In re SuperValu, Inc., Consumer Data Sec. Breach Litig.*, 870 F.3d 763, 773 (8th Cir. 2017) (citation omitted) (finding standing allegations sufficient despite "omissions [that] could be fatal to the complaint under the 'higher hurdles' of Rules 8(a) and 12(b)(6)" because "standing under Article III presents only a 'threshold inquiry,' requiring 'general allegations'").

But the panel did not give any "careful judicial examination" to the

States' allegations.  *See* R. Doc. 22, at 10-16, ¶¶11.a-q, 11.1-5; Opening Br. at 5; States' Opening Br. at 39-40.  First, the panel asserted that the States' "alleged harms are vague and speculative," and concluded that these injuries were not "'concrete, particularized, and actual or imminent.'"  Op. *8 n.5 (citing *Davis v. FEC*, 554 U.S. 724, 733 (2008)).  But the panel's decision does not explain why.  Nor does it provide any insight into why the States' alleged harms are not "concrete," "particularized," "actual," or "imminent."  Second, the panel concluded that the States' alleged harms are not "fairly traceable to the defendant's challenged behavior…."  *Id.* (again citing *Davis*).  The panel provides no explanation why that is so.  And third, the panel concluded that the States' alleged harms are not "likely to be redressed by a favorable ruling."  *Id.*  But again, the panel does not say why it reached that conclusion.

At bottom, the panel's decision fails to carefully review the States' alleged harms, as this Court's precedent requires.  *See Pucket*, 526 F.3d at 1157.

## CONCLUSION

This Court should review this case *en banc* to ensure that Plaintiffs'

serious claims are heard, that vital questions of constitutional and statutory law are decided, and that serious and irreparable harms are prevented. At bottom, "courts should be able to review ATF's 98-page rule, and the decades of precedent it attempts to change, without the Government putting people in jail or shutting down businesses." *Vanderstok v. Garland*, 2023 U.S. App. LEXIS 26499, at *8-9 (5th Cir. Oct. 2, 2023). The Court should grant the petition.

Respectfully submitted,

Robert J. Olson
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
wjo@mindspring.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440 (T)
stephen@sdslaw.us

*Counsel for Morehouse Enterprises, LLC d/b/a Bridge City Ordnance, Eliezer Jimenez, Gun Owners of America, Inc., and Gun Owners Foundation*

AUSTIN KNUDSEN
 *Attorney General of Montana*
CHRISTIAN B. CORRIGAN
 *Solicitor General*
PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
MONTANA DEPARTMENT
 OF JUSTICE
P.O. Box 201401
Helena, MT 59620-1401

PATRICK MORRISEY
 *Attorney General of West Virginia*
LINDSAY SEE
 *Solicitor General*
MICHAEL R. WILLIAMS
 *Principal Deputy Solicitor General*
OFFICE OF THE WEST VIRGINIA
 ATTORNEY GENERAL
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305

20

406-444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

681-313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for Plaintiff-Appellants State of Montana and State of West Virginia*

TREG R. TAYLOR
Alaska Attorney General

AARON C. PETERSON
  *Senior Assistant Attorney General*
Alaska Department of Law
1031 W. 4th Avenue #200
Anchorage, AK 99501
Aaron.peterson@alaska.gov
(907) 269-5165
*Counsel for Plaintiff State of Alaska*

TIM GRIFFIN
Arkansas Attorney General

NICHOLAS J. BRONNI
Arkansas Solicitor General
DYLAN L. JACOBS
*Deputy Solicitor General*
OFFICE OF THE ARKANSAS ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
Nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov
*Counsel for Plaintiff State of Arkansas*

RAÚL LABRADOR
Idaho Attorney General

JOSH TURNER
  *Deputy Attorney General*
OFFICE OF THE IDAHO ATTORNEY GENERAL
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2400
josh.turner@ag.idaho.gov
*Counsel for Plaintiff State of Idaho*

THEODORE E. ROKITA
Indiana Attorney General

BETSY M. DENARDI
Director of Complex Litigation
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6201
Betsy.DeNardi@atg.in.gov
*Counsel for Plaintiff State of Indiana*

KRIS W. KOBACH
Kansas Attorney General

Appellate Case: 22-2812   Page: 27   Date Filed: 10/06/2023 Entry ID: 5324044

DWIGHT R. CARSWELL
 *Deputy Solicitor General*
OFFICE OF KANSAS
ATTORNEY GENERAL
120 SW 10th Avenue, 3rd Floor
Topeka, KS 66612-1597
(785) 368-8410 Phone
dwight.carswell@ag.ks.gov

DANIEL CAMERON
Kentucky Attorney General

AARON J. SILLETTO
 *Assistant Attorney General*
OFFICE OF THE ATTORNEY
GENERAL OF KENTUCKY
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Aaron.Silletto@ky.gov
*Counsel for Plaintiff*
*Commonwealth of Kentucky*

JEFF LANDRY
Louisiana Attorney General

ELIZABETH B. MURRILL
 *Solicitor General*
LOUISIANA DEPARTMENT OF
JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
murrille@ag.louisiana.gov
*Counsel for Plaintiff State of*
*Louisiana*

ANDREW BAILEY
Missouri Attorney General

 MARIA LANAHAN
 *Deputy Solicitor General*
OFFICE OF THE ATTORNEY
GENERAL OF MISSOURI
815 Olive St., Suite 200
St. Louis, MO 63101
(314) 340-4978
Maria.Lanahan@ago.mo.gov
*Counsel for Plaintiff State of*
*Missouri*

MICHAEL T. HILGERS
Nebraska Attorney General

ERIC HAMILTON
 *Solicitor General*
OFFICE OF THE NEBRASKA
ATTORNEY GENERAL
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
eric.hamilton@nebraska.gov
*Counsel for Plaintiff State of*
*Nebraska*

GENTNER F. DRUMMOND
Oklahoma Attorney General

ZACH WEST
 *Director of Special Litigation*
OKLAHOMA ATTORNEY
GENERAL'S OFFICE
313 NE 21st St.
Oklahoma City, OK 73105

(405) 522-1961
zach.west@oag.ok.gov
*Counsel for Plaintiff State of*
*Oklahoma*

ALAN WILSON
South Carolina Attorney General

J. EMORY SMITH, JR.
Deputy Solicitor General
OFFICE OF THE ATTORNEY
GENERAL OF SOUTH
CAROLINA
P.O. Box 11549
Columbia, SC 29211
(803) 734-3680
ESmith@scag.gov
*Attorneys for Plaintiff State of*
*South Carolina*

ANGELA COLMENERO
Provisional Texas Attorney
General

RALPH MOLINA
  *Deputy Attorney General for*
*Legal Strategy*
CHARLES K. ELDRED
  *Chief, Legal Strategy Division*
OFFICE OF THE ATTORNEY
GENERAL OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700

Ralph.Molina@oag.texas.gov
Charles.Eldred@oag.texas.gov
*Counsel for Plaintiff State of*
*Texas*

SEAN D. REYES
Utah Attorney General

MELISSA A. HOLYOAK
  *Solicitor General*
OFFICE OF THE UTAH
ATTORNEY GENERAL
350 N. State Street, Suite 230
Salt Lake City, UT 84114
(801) 366-0260
melissaholyoak@agutah.gov
*Counsel for Plaintiff State of*
*Utah*

BRIDGET HILL
Wyoming Attorney General

RYAN SCHELHAAS
Chief Deputy Attorney General
OFFICE OF THE WYOMING
ATTORNEY GENERAL
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov
*Counsel for Plaintiff State of*
*Wyoming*

Appellate Case: 22-2812     Page: 29     Date Filed: 10/06/2023 Entry ID: 5324044

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(b) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,898 words as determined by the word-counting feature of Microsoft Word 365.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 365 in 14-point proportionally spaced Century Schoolbook font.

And this brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Kaspersky Antivirus and no virus was detected.

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh

Appellate Case: 22-2812    Page: 30    Date Filed: 10/06/2023 Entry ID: 5324044

## CERTIFICATE OF SERVICE

I certify that on October 6, 2023, I electronically filed the foregoing motion with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

*/s/ Stephen D. Stamboulieh*
Stephen D. Stamboulieh

Appellate Case: 22-2812   Page: 31   Date Filed: 10/06/2023 Entry ID: 5324044